IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 11, 2007 Session

## DEREK DAVIS v. MARK LUTTRELL, ET AL.

Direct Appeal from the Chancery Court for Shelby County
No. CH-3-0295-2     Arnold B. Goldin, Chancellor

No. W2007-01077-COA-R3-CV - Filed December 17, 2007

The Shelby County Sheriff's Department terminated the employment of deputy Derek Davis based on a random drug screening. The Civil Service Merit Board affirmed the Department's decision. Mr. Davis appealed to the Chancery Court for Shelby County, which affirmed. Mr. Davis filed a timely notice of appeal to this Court, asserting the Board's decision is not supported by substantial material evidence. We reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Leslie A. Miller, Somerville, Tennessee, for the appellant, Derek Davis.

Martin W. Zummach, Assistant Shelby County Attorney, Germantown, Tennessee, for the appellee, Shelby County Sheriff's Department.

### OPINION

Plaintiff/Appellant Derek Davis (Mr. Davis) was employed by the Shelby County Sheriff's Department ("the Department") beginning in 1995. On August 20, 2002, Mr. Davis and other sheriff's deputies were urine tested for illegal drugs as part of the Department's random drug screening program. The urine sample in a container labeled with the initials "D D" tested positive for marijuana. On August 28, Mr. Davis underwent a second, independent test that, according to the Department, was invalid because it was determined that Mr. Davis' urine had been intentionally or unintentionally diluted. Following a Loudermill hearing, the Department terminated Mr. Davis' employment. Mr. Davis appealed to the Civil Service Merit Board ("the Board"), which upheld the termination following a hearing. Mr. Davis appealed to the Chancery Court for Shelby County, filing a petition for writ of certiorari and complaint for deprivation of civil rights. Following a hearing on April 6, 2006, the chancery court affirmed.

Mr. Davis filed a notice of appeal to this Court on May 4, 2006. In February 2007, this Court dismissed Mr. Davis' appeal for failure to appeal a final judgment or order. *Davis v. Shelby County Sheriff's Dept.*, No. W2006-00980-COA-R3-CV, 2007 WL 609159 (Tenn. Ct. App. Feb. 28, 2007). The trial court entered final judgment on April 23, 2007. Mr. Davis filed a timely notice of appeal on May 17, 2007, and oral argument was heard by this Court in October 2007. We reverse.

### *Issue Presented*

Mr. Davis raises a single issue for our review:

Is a Civil Service Merit Review Board permitted to terminate an employee on the standard that any material evidence to support the agency's findings is a basis for termination when the sole reason for the employee's termination is based upon an inadmissible drug test result?

### *Standard of Review*

This is an appeal from the trial court's judgment under a writ of certiorari. Such a writ is available from administrative decisions where an administrative board or agency is acting in a judicial or quasi-judicial capacity. *Davison v. Carr*, 659 S.W.2d 361, 363 (Tenn. 1983). The Tennessee code provides:

The writ of certiorari may be granted whenever authorized by law, and also in all cases where an inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally, when, in the judgment of the court, there is no other plain, speedy, or adequate remedy.

Tenn. Code Ann. § 27-8-101 (2000).

The court's review under such a writ is limited to whether the inferior board or tribunal exceeded its jurisdiction or acted illegally, arbitrarily, or fraudulently. *McCallen v. City of Memphis*, 786 S.W.2d 633, 640 (Tenn.1990). The reviewing court does not re-weigh the evidence, but must uphold the board's decision if the board acted within its jurisdiction and did not act illegally, arbitrarily, or fraudulently. A board's determination is arbitrary and void if it is unsupported by any material evidence. *Watts v. Civil Serv. Bd. of Columbia*, 606 S.W.2d 274, 276-77 (Tenn. 1980). Whether material evidence supports the board's decision is a question of law to be decided by the reviewing court based on the evidence submitted to the board. *Id.* at 277. Our review of the trial court's conclusions on matters of law is *de novo* with no presumption of correctness. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000); Tenn. R. App P. 13(d). However, this Court's scope of review of the board's determination "is no broader or more comprehensive than that of the trial court with respect to evidence presented before the [b]oard." *Watts*, 606 S.W.2d at 277.

*Analysis*

Mr. Davis' argument on appeal is that the decision to terminate his employment was arbitrary and not supported by material evidence where the drug screening process on which the decision was based was flawed with respect to the specimen collection procedure and chain of custody. He asserts that, "due to the inherent problems concerning the chain of custody with the urine specimen, a reasonable person could come to the conclusion that the urine" which tested positive for illegal drugs did not belong to Mr. Davis.

It is undisputed that, when tested, Mr. Davis was in uniform and wearing his badge. However, although Mr. Davis does not deny signing a document stating that the specimen container at issue here was sealed with tamper-proof seals in his presence and that the affixed label was correct, he submits that he did not read the document before signing it. Mr. Davis asserts that ten to fifteen people were tested at the Medlab testing facility on the day his urine sample was taken, the sample at issue in this case was not his urine, that the seal was not tamper-proof, and that he did not initial the adhesive seal attached to the container. Mr. Davis contends that the "D" initials on the specimen container were not made by him. He further asserts that he was never asked for identification during the testing procedure and that, in essence, the testing procedure therefore did not meet mandated Federal Guidelines as testified to by the Board's expert witness, Mr. Gary Houston (Mr. Houston), the Medlab lab manager who conducted the August 20 screening. He also contends that, according to Mr. Houston, the bar code sticker admitted into evidence ends with either a "21" or "31," and that if it is a "21" the sample is not Mr. Davis' but, if it is "31" it arguably is Mr. Davis' sample. Mr. Davis also submits that the testing form which is required to be signed by the collector of the urine sample appears to have been signed by a Michelle Swan, and that Mr. Houston testified that no one named Michelle Swan was working for him in August 2002 and that he did not know a person by that name.

The Department, on the other hand, asserts that the Board's decision was supported by substantial and material evidence and that Mr. Davis' argument relates to the weight of the evidence rather than its existence. It argues that whether the initials on the specimen container were, in fact, made by Mr. Davis was a matter of credibility to be determined by the trial court, and that "Mr. Davis' imagined difficulties with the chain of custody pivoted solely around how he drafts his initials 'D'."

Upon review of the record, we note that although counsel for Mr. Davis referred to the "chain of custody" at the April 2006 hearing before the chancery court, the discussion before the chancellor focused on issues of Mr. Davis' credibility arising from the diluted August 28 second urine test and whether the "D" initials on the August 20 specimen were made by Mr. Davis. The chancellor inquired:

> Isn't that really the only - - I mean, that's really the only issue, is whether those were his initials, and he says they weren't, and –

Counsel for Mr. Davis replied: "That's correct." Counsel for Mr. Davis additionally stated that there was no dispute that the August 28 drug test was diluted, but that there was no proof that Mr. Davis intentionally diluted the sample by consuming excess amounts of fluids. The discussion between counsel for Mr. Davis and the chancellor indicates that the chancellor determined this issue was largely one of credibility with respect to whether Mr. Davis intentionally diluted the second urine test and, more importantly, whether the initials on the August 20 specimen container were made by Mr. Davis.

The exhibits included in the record indicate that Mr. Davis signed the Medlab form acknowledging that the specimen container was sealed with tamper-proof seals in his presence; that the information provided on the form and affixed to the specimen container was correct; and that "Donor-supplied information on prescription drugs and medications must be obtained in accordance with the Americans with Disabilities Act." Mr. Davis' ID number was also included directly beside his signature. Further, the section "to be completed by collector or employer representative" indicates that "donor identification" was obtained by a "photo ID." It appears to us, however, that the form was signed not by a "Michelle Swan," but by a "Michelle Swuni" or "Michelle Seeuni," who attested to transferring the security pouch containing the sealed specimen to the courier for transport to the laboratory. The lab indicated that the pouch and seals were intact upon receipt. The identification number contained on the form is 0312131. The copy of the specimen bar code included in the record is, indeed, a poor copy and it is impossible to state with certainty whether the identification number ends with "31" or "21." We also find that it is impossible to determine, absent a handwriting expert, whether the "D" initials on the specimen bottle were made by Mr. Davis by simple comparison with the signature on forms signed by Mr. Davis.

At Mr. Davis' Loudermill hearing on September 10, 2002, Mr. Davis stated that, when he reported as ordered for the random drug screening, he "walked through the door into the lobby and was directed to the left and I believe there was a woman that was checking off names." He stated that he was in uniform, with his name embroidered on his shirt. Mr. Davis stated the he did not remember initialing any strips, that he handed his specimen cup to another deputy, and left without "watch[ing] anything else after that." He further stated that he was not asked for photo identification, but that he did recall signing the Medlab form. Mr. Davis also stated that he was not asked whether he took prescription medication, which he does, and that the medication apparently did not appear on the initial screening. We also observe that, at the Loudermill hearing, Mr. Davis stated that he had not undergone the drug screening procedure before and that he signed the form as he entered the room. Additionally, at the time the Loudermill hearing was conducted, the Department had not established the chain of custody of Mr. Davis' specimen.

Mr. Davis' appeal to the Civil Service Merit Board was heard on December 3, 2002. In addition to hearing testimony from Mr. Davis, the Board heard testimony from Mr. Gary Houston (Mr. Houston), manager of the toxicology lab for Methodist Healthcare (Medlab), and Chief David R. Wing (Chief Wing), who chaired Mr. Davis' Loudermill hearing. Mr. Houston testified that the dilution of the urine sample taken from Mr. Davis on August 28 could have been intentional or unintentional. Mr. Houston further testified that either a photo ID or other accurate identification

-4-

is required by the drug screening process, and that he had no knowledge of whether Mr. Davis was, in fact, asked for identification at the August 20 testing. Mr. Houston testified that no one named Michelle Swan was working for him on August 20, and that he did not know a Michelle Swan. Mr. Houston testified that the number 0312131 on the form was a "chain of custody number" that linked the form with the bar code located on the bottom of the specimen container. As Mr. Davis asserts, Mr. Houston was unable to determine whether the copy of the bar code indicated a "31" or "21" identification number. Moreover, although Chief Wing testified regarding the usual procedures for the drug screening process, he was unable to testify regarding the collection procedures utilized on August 20.

No one, it appears, testified or determined who actually signed the Medlab form on behalf of Medlab. Further, neither the Department nor Medlab appears to know the identity of the person who actually received Mr. Davis' urine sample, and neither the Department nor Medlab produced a witness to testify regarding whether appropriate collection procedures were followed during the collection process on August 20. The identity of "Michelle Swan" is unknown. Most significantly, neither the Department nor Medlab was able to determine whether the bar code on the specimen at issue here in fact matched the chain of custody number on the Medlab form signed by Mr. Davis.

In light of the totality of the evidence in this case, we agree with Mr. Davis that the decision to terminate his employment was arbitrary where the Department was unable to present any evidence to establish that the specimen at issue in this case belonged, in fact, to Mr. Davis. We are not insensitive to the chancellor's determination that, to a large extent, the Board's decision was based on a determination of credibility with respect to the "D" initials on the specimen. Additionally, Mr. Davis' contention that he did not read the Medlab form before signing it is not, without more, sufficient to excuse him from its representations. However, the Department's inability to establish that the specimen bar code matched the Medlab form signed by Mr. Davis, coupled with the complete absence of any testimony or evidence regarding the procedures followed on August 20 and the unknown identity of the mysterious Michelle Swan or Swani or Swuni or Seeuni, simply renders the Department's decision based on the evidence in the record arbitrary.

### *Holding*

In light of the foregoing, we reverse the determinations of the chancery court and the Board terminating Mr. Davis' employment based on the August 20, 2002, drug screening. Costs of this appeal are taxed to the Appellee, Shelby County Sheriff's Department.

_____
DAVID R. FARMER, JUDGE